822 So.2d 229 (2002)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, et al, Plaintiff-Appellant,
v.
COLE OIL AND TIRE COMPANY, INC., Defendant-Appellee.
No. 36,122-CW.
Court of Appeal of Louisiana, Second Circuit.
July 17, 2002.
Opinion on Rehearing August 8, 2002.
*230 Bertrand & Soileau by Ronald J. Bertrand, Lake Charles, for Appellant.
Sanders & Sanders by Martin Smith Sanders, III, Winnfield, for Appellee.
Before BROWN, STEWART & PEATROSS, JJ.
PEATROSS, J.
This case arises from a judgment of the trial court annulling a prior judgment of that court which had dismissed a claim for increased compensation pursuant to a State of Louisiana expropriation of property on the grounds that the action had been abandoned. The matter came to this court on application for supervisory review filed by the State through the Department of Transportation and Development ("DOTD"). The writ was granted and the case was docketed for review. After thorough consideration, we find that the claim for increased compensation was not abandoned and, therefore, affirm the judgment of the trial court annulling the prior judgment. The matter, however, is remanded for assessment of costs.

FACTS
This matter involves a State expropriation of private land made pursuant to La. R.S. 48:441, et seq. On March 10, 1997, DOTD filed a petition stating its intent to expropriate a portion of a parcel of land in Jackson Parish owned by Cole Oil and Tire Company, Inc. ("Cole Oil"). DOTD deposited in the registry of the court its estimate of the compensation due Cole Oil for the expropriated property and the trial court signed the order of expropriation on March 7, 1997. On April 18, 1997, Cole Oil withdrew the amount on deposit and filed an answer to the petition in accordance with La. R.S. 48:450(B), requesting an increase in compensation from that deposited in the registry of the court by DOTD. Cole Oil operated its business on the property at issue and had tanks and pumps on the property, which, as a result of the partial taking, had to be relocated to another location on the property not expropriated. The necessity of changes to the property in order to allow Cole Oil to continue operating at the site was a major factor in this case, as will be discussed later in this opinion.
On October 31, 1997, Cole Oil propounded interrogatories to DOTD pertaining to the claim for increased compensation. DOTD answered the interrogatories on January 28, 1998. On March 3, 1998, DOTD issued interrogatories to Cole Oil. No other formal action of record occurred in the case until March 9, 2001, when DOTD filed a Motion for Final Judgment alleging that Cole Oil had abandoned its claim for an increase in compensation pursuant to La. R.S. 48:452.1 by failing to take any step in the prosecution of its claim for a period in excess of three years. A judgment fixing the amount deposited in the registry of the court as just compensation for the expropriation and dismissing with prejudice Cole Oil's claim for an increase in compensation was signed on March 15, 2001. There is no indication in the record, however, that Cole Oil received notice of this judgment. Cole Oil became aware of the judgment in September 2001 when it requested to depose DOTD experts and was informed by counsel for DOTD that the claim had been dismissed. After learning of the judgment dismissing its claim, on October 25, 2001, Cole Oil filed a Rule for New Trial asking that the judgment signed on March 9, 2001[sic], be set *231 aside. Cole Oil argued that it had not abandoned the case as evidenced by correspondence between the parties regarding the taking of depositions, selection and substitution of appraisers and inspections of the property. On December 6, 2001, the trial court granted the new trial, which annulled the judgment of March 15, 2001, and concluded that:
Cole had clearly demonstrated that they never intended to abandon the action, but more importantly based on the exhibits attached to the memorandum filed by Cole it indicates to this court that they definitely had to the best of their ability taken steps to prosecute this claim.
As previously stated, DOTD subsequently filed an application for supervisory review and stay of proceedings with this court. This court granted the writ, stayed the proceedings and docketed the case for review.

DISCUSSION
The issue in this case is whether or not the action for increased compensation filed by Cole Oil was abandoned under La. R.S. 48:452.1, which provides, in pertinent part, as follows:
A. An owner's claim for an increase in the compensation is perfected when he timely files his answer as provided in R.S. 48:450 and is thereafter abandoned when he fails to take any step in the prosecution of that claim for a period of three years. This provision shall be operative without formal order, but on ex parte motion of the department the trial court shall render final judgment fixing just compensation in the amount deposited in the registry of the court and awarding that sum to the defendant and dismissing with prejudice any claim for any increase in compensation.
Thus, the question becomes whether or not Cole Oil (which, for purposes of an abandonment determination, is the plaintiff in reconvention seeking increased compensation) took any step in the prosecution of its claim during the three years following the date the last action was taken in the matter (March 3, 1998, when DOTD issued interrogatories to Cole Oil) and/or if one of the two jurisprudentially created exceptions to the doctrine of abandonment applies in this case.
A step towards the prosecution of a lawsuit is defined as taking formal action before the court which is intended to hasten the suit toward judgment, or the taking of a deposition with or without formal notice. La. C.C.P. art. 1446(D). The step must be taken in the proceeding and, with the exception of formal discovery (La. C.C.P. art. 561(B)), must appear in the record of the suit. Finally, the step must be taken within the legislatively prescribed time period of the last step taken by either party. Clark v. State Farm Mutual Automobile Insurance Company, 00-3010 (La.5/15/01), 785 So.2d 779.
When the parties do not take such "steps" for the legislatively prescribed period, the logical inference is that the parties intended to abandon the claim. This presumption, however, is not conclusive. The supreme court in Clark, supra, citing the dissenting opinion in DeClouet v. Kansas City Southern Railway Co., 176 So.2d 471 (La.App. 3d Cir.1965), opined that an ex parte dismissal may be rescinded by rule to vacate it upon a showing that "a cause outside the record prevented accrual" of the abandonment period. The two permissible causes outside the record recognized by Louisiana courts are embodied in the above-stated exceptions to the abandonment doctrine. The first exception is based on the doctrine of contra non valentem and applies when the failure to *232 prosecute a claim is caused by circumstances beyond the control of the plaintiff while the second exception is defense-oriented and applies when the defendant (DOTD in this case) waives his right to assert abandonment by taking actions inconsistent with an intent to treat the case as abandoned. Chevron Oil Co. v. Traigle, 436 So.2d 530 (La.1983).
In the more recent Clark case, the supreme court opined that a defendant's actions which constitute such a waiver may occur during the three-year period of alleged abandonment or in the post-abandonment period. In Clark, an unconditional tender by defendant insurer was held to constitute a waiver of the right to assert abandonment.[1]
More generally, we note the following well-established rules of law regarding abandonment. Louisiana courts construe abandonment statutes liberally, in favor of maintaining a plaintiff's suit. Abandonment statutes are intended to dismiss those actions in which a plaintiff's inaction has clearly demonstrated his abandonment of the case and not to dismiss those cases in which a plaintiff has clearly demonstrated that he does not intend to abandon the action. Clark, supra, citing Kanuk v. Pohlmann, 338 So.2d 757 (La.App. 4th Cir.1976), writ denied, 341 So.2d 420 (La.1977); Johnson v. Berg Mechanical Industries, 35,290 (La.App.2d Cir.12/19/01), 803 So.2d 1067, writ denied, 02-0240 (La.4/26/02), 814 So.2d 556; Sullivan v. Cabral, 32,454 (La.App.2d Cir.10/27/99), 745 So.2d 791, writ denied, 99-3324 (La.1/28/00), 753 So.2d 837. Form does not prevail over substance in determining whether an action has been abandoned. See Clark, supra, and cases cited *233 therein; Johnson v. Berg Mechanical Industries, supra. As the Clark court noted, "dismissal is the harshest of remedies, the general rule is that `any reasonable doubt [about abandonment] should be resolved in favor of allowing the prosecution of the claim and against dismissal for abandonment.'" Clark, supra, citing Young v. Laborde, 576 So.2d 551 (La.App. 4th Cir. 1991). Before an action can be dismissed as abandoned, it must be certain that the claim is not being seriously pursued. Naccari v. Namer, 01-2410 (La.App. 4th Cir.2/6/02), 809 So.2d 1157, citing Manale v. Executive Healthcare Recruiters, Inc., 98-2652 (La.App. 4th Cir.11/18/99), 747 So.2d 1200, writ not considered, 99-3595 (La.2/18/00), 754 So.2d 957.
The supreme court explained in Clark, supra:
Abandonment is not a punitive concept; rather, it is a balancing concept. Abandonment balances two equally sound, competing policy considerations: "on the one hand, the desire to see every litigant have his day in court, and not to lose same by some technical carelessness or unavoidable delay; on the other hand, the legislative purpose that suits, once filed, should not indefinitely linger, preserve stale claims from the normal extinguishing operation of prescription...." Given the balancing function served by abandonment, "Louisiana's jurisprudence tends to be inconsistent; no bright lines exist." (Emphasis in original).[2]
A post-Clark decision from the first circuit illustrates the above-described policy considerations in abandonment cases. In re Medical Review Panel of Jones, 00-1290 (La.App. 1st Cir.6/22/01), 801 So.2d 471, writs denied, 01-2120 and 2145 (La.11/2/01), 800 So.2d 877 and 879. addressed the question of whether negotiations and correspondence regarding the selection of an attorney chair for a medical review panel was sufficient to defeat a claim of abandonment by the defendant doctor. The court likened the abandonment statute in medical malpractice actions, La. R.S.40:1299.39.1A(2)(c), to article 561 and relied on Clark, supra, to find that the claim was not abandoned. Specifically, the court noted the holding of Clark which allowed outside evidence to establish a pre-abandonment waiver on the part of a defendant and recognized that abandonment statutes are designed to protect a defendant and to ensure notice to the defendant when action is taken to interrupt abandonment. The court in In re Medical Review Panel of Jones, thus opined that, "when the defendant is involved in the action, the defendant does not need notice or protection." The defendant in that case "was fully aware of the actions taken by Jones and her counsel as defendant's counsel was participating in them, and there was certainly no evidence Jones intended to abandon her claim." The court concluded that "to uphold dismissal of her claim in light of the fact of this case would be to deny Jones her day in court based on a technicality, a result we cannot countenance."
Likewise, a review of the activity in the case sub judice during the three-year period of alleged abandonment leads us to a similar conclusion. In May 1999, counsel for Cole Oil wrote to counsel for DOTD requesting dates on which to depose DOTD's appraisers. Counsel for DOTD responded by letter of May 20, 1999, in which he stated that he would "prefer to delay any depositions" until receipt of Cole Oil's answers to interrogatories issued by *234 DOTD. On September 21, 1999, counsel for DOTD informed counsel for Cole Oil by letter that DOTD's appraiser was moving to another state and that another appraiser had been asked to appraise the property. In that letter, counsel for DOTD requested access to the property because the new appraiser had attempted to inspect the property, but could not gain access as the property was closed. On March 7, 2000, counsel for Cole Oil wrote to counsel for DOTD indicating that it was her belief that the new appraiser had inspected the property. She also requested the results of that inspection. As previously stated, it was not until after the Motion for Final Judgment was filed and the judgment signed and after counsel for Cole Oil had again requested to depose DOTD's appraiser that counsel for Cole Oil became aware of the judgment dismissing Cole Oil's claim.
In summary, the totality of the circumstances in this particular case reveal that DOTD was involved and was participating in this proceeding during the three-year period as evidenced by its correspondence to Cole Oil seeking responses to interrogatories before scheduling depositions and by its substitution of appraisers and subsequent inspection of the property. In addition, there is absolutely no evidence in this record, that Cole Oil ever intended to abandon this action.
In addition, counsel for Cole Oil was in contact with counsel for DOTD on a consistent basis, addressing a matter which presented continuing changes and difficulties. As the trial court noted in its reasons for judgment, in the latter part of 1998, both parties had to obtain additional cost information once it was determined that Cole Oil's pumps and other facilities would have to be moved because they were going to be too close to the road to be insured. After getting this cost estimate, the parties then learned that moving the pumps would place them too close to the railroad tracks on the back of the property, which required obtaining additional cost information. During this time, apparently, Cole Oil was in danger of going out of business. We agree with the trial court's assessment of this case as presenting unique problems, especially in that DOTD changed appraisers during the proceeding and then declined to schedule depositions of its experts until further discovery was complete. As previously discussed, counsel for Cole Oil and DOTD were actively seeking solutions to the problems presented in this case and we find that to dismiss this case as abandoned would fly in the face of the well-established policy considerations underlying the abandonment doctrine.[3]
In addition, we believe that the activity in this case in the three years prior to the March 15, 2001 judgment would certainly have led Cole Oil to believe that DOTD had no intention of asserting abandonment. Finally, the active participation of DOTD in this case removes any possible prejudice to DOTD in rejecting its claim of abandonment. The totality of the circumstances of the case sub judice command the conclusion that the action for increased compensation was not abandoned.

CONCLUSION
For the reasons stated herein, the judgment of the trial court is affirmed with all *235 costs to be paid by DOTD. The appellate costs are $66.50. The matter is remanded for the trial court to set the amount of trial and record preparation costs. La. R.S. 13:5112.
AFFIRMED; REMANDED FOR DETERMINATION OF TRIAL COURT COSTS.
PER CURIAM.
On February 21, 2002, this court granted the writ application of DOTD and entered an order staying all further proceedings in this matter. This stay shall be effective in this matter through final judgment on the abandonment issue or further order of this court or the Louisiana Supreme Court.
NOTES
[1] In Clark, the supreme court was interpreting and applying La. C.C.P. art. 561, which provides the general rule of abandonment in civil cases and reads as follows:

A.(1) An action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years, unless it is a succession proceeding:
(a) Which has been opened.
(b) In which an administrator or executor has been appointed.
(c) In which a testament has been probated.
(2) This provision shall be operative without formal order, but, on ex parte motion of any party or other interested person by affidavit which provides that no step has been taken for a period of three years in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment. The order shall be served on the plaintiff pursuant to Article 1313 or 1314, and the plaintiff shall have thirty days from date of service to move to set aside the dismissal. However, the trial court may direct that a contradictory hearing be held prior to dismissal.
B. Any formal discovery as authorized by this Code and served on all parties whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step in the prosecution or defense of an action.
C. An appeal is abandoned when the parties fail to take any step in its prosecution or disposition for the period provided in the rules of the appellate court.
We recognize that La. R.S. 48:452.1 differs from article 561 in the respect that it does not recognize a step by the defense as an act that will interrupt the running of abandonment. The concept of waiver of the right to assert abandonment, however, is a broader concept than "taking a step" within the meaning of the civil code and jurisprudence. We believe Clark's discussion of a defendant's waiver of this right to be consistent with the purpose of abandonment statutes as expressed by overwhelming majority of cases in this state which is that such statutes are intended to dismiss only actions which in fact clearly have been abandoned in an effort to prevent stale claims from lingering. Guided by this purpose, we find it logical that a defendant's actions which may constitute waiver are relevant in abandonment cases generally, not solely in cases under article 561.
[2] See also Shulver v. Slocum, 566 So.2d 1089 (La.App. 2d Cir.1990), writ denied, 569 So.2d 984 (La.1990), holding that abandonment is not a punitive concept; rather, it is designed to discourage frivolous lawsuits by preventing plaintiffs from letting them linger indefinitely.
[3] From a practical standpoint, we note that expropriation cases are unique matters by nature, involving difficult issues of valuation and damage calculations with appraisers from the parties taking different approaches to valuation of the property. Taking the deposition of the original appraiser would have been a futile act as that appraiser became unavailable and another appraiser was retained.