| PEATROSS, J.
This appeal arises from a ruling on a mandamus action in favor of Linda L. Goldston, in which the trial court ordered the State of Louisiana, Board of Supervisors, et al (the “Board”) to reopen her medical review proceedings. From this ruling, the Board appeals. For the reasons set forth in this opinion, we affirm.

*1255
FACTS

On March 22, 2001, Ms. Goldston filed a complaint against the Board alleging that medical treatment provided to her by LSU-Medical Center-Monroe (“LSU-Monroe”), formerly known as E.A. Conway Medical Center, constituted a breach of medical standards, medical negligence, breach of contract and/or unintentional torts by the medical center, through its employees.
In a letter. dated May 23, 2003, and addressed to the Patients Compensation Oversight Board (“PCOB”), Ms. Goldston, through her attorney, requested that Larry Arbour be appointed as attorney-chair of the medical review panel that would oversee her claim. Despite being written within the 90-day grace period, per La. R.S. 40:1299.39.1(A)(2)(c),[1] this letter was not addressed or copied to the appropriate agency-the Division of Administration-but, rather, due to an error, was only sent to the PCOB. On March 28, 2003, the Commissioner of Administration notified Ms. 1 ¡jGoldston’s attorney that two years had elapsed during which no action had been taken to secure an attorney-chair for the Medical Review Panel.
In response, Ms. Goldston’s attorney sent a separate letter, dated December 4, 2003, this time correctly addressed to the Division of Administration, regarding the selection of Mr. Arbour as the attorney-chair for her medical review panel. This (second) letter, however, was sent beyond of the aforementioned 90-day grace period provided in the statute.
On June 10, 2003, Ms. Goldston’s attorney filed a Petition for Damages alleging that the medical treatment she received at LSU-Monroe was violative of multiple standards, as described, supra. On September 19, 2003, in response, the Board filed a Dilatory Exception of Prematurity based on Ms. Goldston’s attorney’s failure to fulfill the statutory requisites necessary for her allegations to be heard in court. Ms. Goldston’s attorney filed a Motion in Opposition to Exception of Prematurity on December 5, 2003, and a hearing was set for December 15, 2003, and reset for March 10, 2004. In the meantime, around January 9, 2004, the Division of Administration notified Ms. Goldston, through her attorney, that the file on her complaint was closed as of July 1, 2003. On March 18, 2004, the Dilatory Exception was heard and granted in favor of the Board, dismissing, without prejudice, all of Ms. Gold-ston’s claims.
On March 12, 2004, Ms. Goldston’s attorney filed a Petition for Writ of Mandamus, after the trial court’s hearing and ruling, but before the order was signed on the aforementioned Dilatory Exception. In her mandamus action, Ms. Goldston’s attorney sought to direct the Division of | .¡Administration to revoke its dismissal of her medical review proceeding and order the same be reopened for further proceedings. At the June 3, 2003 hearing of her writ of mandamus action, the trial court found in favor of Ms. Goldston and ordered the medical proceedings to be reopened. The trial judge assigned oral reasons in which he stated, in part, “I am going to grant the Writ of Mandamus based on the *1256 jurisprudence cited ... in Jones.”[2] He further stated that “I believe notice was in fact given [to the Division of Administration].” The Board appeals this ruling.

DISCUSSION

Specification of Error One: The Trial Court Erred in Applying the Rule Enunciated in the First Circuit’s Jones Decision to this jurisdiction.
The Board’s first assignment of error concerns the trial judge’s reliance on Jones in making his decision. Ms. Goldston argues, by way of contrast, that the citation to the Jones ease was appropriate, based on the applicable statutory language. She states that “[t]he statute says ‘take action,’ NOT ‘take action and notify the Commissioner of the action that has been taken.” In Jones, the first circuit reversed the dismissal of the plaintiffs mandamus action, that would have compelled the Division of Administration to reopen its files on her malpractice action. The court further held that a series of nine letters satisfied the statutory requirement[3]14that, in a malpractice action, the plaintiff timely appoints an attorney-chair for the state medical review panel, despite the fact that her notice to the Division of Administration on the parties’ agreement of an attorney-chair occurred after the Division had closed the file on plaintiffs claim. The Jones court also cited Clark v. State Farm Mutual Auto. Ins. Co., 00-3010 (La.5/15/01), 785 So.2d 779, for the proposition that abandonment statutes should be construed liberally in favor of maintaining the plaintiffs suit, rather than dismissing it.
The Board argues that the Jones rule should not be accepted in this jurisdiction. They contend that the version of La. R.S. 40:1299.39.1(A)(2)(c) applicable when Ms. Goldston filed her complaint allowed her only two “actions”: 1) her notification to the Division of the parties’ agreement of an attorney-chair; and 2) her request for a strike list in the event that the parties cannot agree on the selection of a chair. The Board argues that the first circuit improperly extended the definition of “action” under the statute to include “actions” not contemplated under the mandatory medical malpractice review procedure in effect at the time Ms. Goldston’s complaint was filed. The Board argues that such a broad interpretation of the word “action” defeats the legislative intent of the law by subjecting defendants to uncertainty regarding the claims against them. In support of this argument, the Board states that “... the First Circuit’s overly broad interpretation of the word ‘action’ to include any minimal, subjective, and unilateral effort by a malpractice plaintiff, im~ properly | ^prejudices the statutory rights afforded to malpractice defendants.” (Emphasis the Board’s.)
Ms. Goldston argues that the Jones court was correct in recognizing that La. R.S. 40:1299.39.1 is an abandonment statute and that any uncertainty as to its application should be construed in favor of maintaining the claim. She cites to Jones, in which the court stated:
There is no provision in 40:1299.39.1(A)(2)(c) that the action of the claimant or his attorney has to be *1257 “on the record” with the Division of Administration.
Ms. Goldston further cites to DOTD v. Cole Oil and Tire Co., Inc., 36,122 (La.App.2d Cir.7/17/02), 822 So.2d 229, writ denied, 02-2325 (La.11/15/02), 829 So.2d 436, in which this court recognized the Jones decision as the appropriate authoritative analysis of the law of abandonment. Ms. Goldston points out that no court has reached a decision contrary to Jones to date. She also contends that this court could not reach a decision that rejects Jones and remains consistent with Cole Oil. She further asserts that “the only logical way to follow Cole Oil while rejecting Jones would be to conclude that the Jones court erred in identifying La. R.S. 40:1299.39.1 as an abandonment statute.” Accordingly, Ms. Goldston argues that there is no authority for rejecting Jones. We agree.
The record in the case sub judice reflects that there was an agreement regarding the selection of Larry Arbour as attorney-chair within the 90-day period, as set out by law. In Jones, supra, the court pointed out that “[tjhere are no bright lines insofar as the meaning of the word ‘action’ in Revised Statute 40:1299.39.1A(2)(c); in fact, there are no cases interpreting it at all.” [ fiThis court approved Jones as the appropriate analysis of the law of abandonment in Cole Oil. In Jones, the first circuit considered and rejected a similar argument to the one made by the Board in this case, i.e.-that without actual notice to the Division of Administration, the agency cannot be made aware of a selection of an attorney-chair. We find, as the first circuit did in Jones, that the “[djocumentation supports a finding ... that an agreement on the attorney chair was made before the end of the 90-day grace period.”
The Board argues that, under Ms. Gold-ston’s logic, a plaintiff may assert, after a medical review file has been closed, that its own informal discussions, internal mem-oranda or other similar “action” may preserve review of its closed claim, despite lack of notification to the appropriate state agency or the opposing party. The record in this case reflects, however, that the first letter was copied and delivered within the 90-day period to the Board’s attorney, putting them on notice of the choice of Larry Arbour as attorney-chair. Further, as stated, swpra, “[tjhere is no provision in 40:1299.39. lA(2)(c) that the ‘action’ of the claimant or his attorney has to be ‘on the record’ with the Division of Administration.” Just as the defendants in Jones, the Board was fully aware of the actions taken by Ms. Goldston’s attorney to secure an attorney-chair and no evidence was submitted to indicate that Ms. Goldston intended to abandon her claim. For these reasons, we reject this specification of error.
17Specification of Error Two: Whether, even if the Jones rule is applicable in this jurisdiction, the trial court erred in applying that rule to the instant case.
The Board next argues that, even if this court accepts the Jones court’s definition of “action,” both the quality and quantity of the “actions” taken by the plaintiff in Jones far exceeded those taken by Ms. Goldston. Ms. Goldston argues, by way of contrast, that “[the Board] misses the point” in its attempts to distinguish Jones from her case.
The Board argues that the Jones rule is inapplicable to the case sub judice because, in addition to her failure to meet the statutory requirements, Ms. Goldston failed to display a continuous and diligent effort in the prosecution of her case. The Board further points out that the last article of correspondence sent out by the *1258 Jones plaintiff was mailed barely one month after the Division closed her file, was properly copied, addressed and received by the appropriate state agency. It asserts that Ms. Goldston sent only two letters, the first being improperly addressed and delivered more than five months after the first. Accordingly, the Board argues that, although Ms. Goldston relies upon several cases indicating a legal presumption in favor of a finding of no abandonment in cases prosecuted diligently, such presumptions should not be misinterpreted to reward an attorney who has lost the review of his client’s malpractice action simply as a result of his own failure to take appropriate and timely action.
The Board further states that the record of correspondence in Jones evidences the great degree of involvement by the defendant in the selection of an attorney-chair. It argues that such efforts are not evidenced by |aMs. Goldston in her case and that LSU-Monroe incurred unnecessary additional legal fees while her file stayed open. Finally, the Board asserts that the great degree of defense counsel participation that founded the basis of the Jones and Clark opinions is “simply not analogous to the instant matter.”
Ms. Goldston contends that a plaintiff who selects an attorney-chair by writing one letter is no less diligent than one who procures the same by writing nine letters (as in Jones). She points out that she wrote a letter within the required 90-day window, but it was not delivered due to a clerical error. Accordingly, she argues that “there is no reason to characterize the Jones plaintiff as significantly more diligent” than she was in this case. In the alternative, Ms. Goldston argues that this case is not about diligence, but, rather, whether or not the selection of an attorney-chair equates to “action” which prevents the dismissal of her medical review panel. It is her position that “once 'action’ has been taken, the panel cannot be dismissed.”
Ms. Goldston argues that she took two “actions” within the 90-day time period to prevent dismissal of her medical review panel: 1) She secured Mr. Arbour as attorney-chair; and 2) She notified the PCOB of Mr. Arbour’s selection. She states that, under Jones, the first action (the selection of Mr. Arbour) was sufficient to prevent dismissal. She further contends that her second action (notifying the PCOB) was sufficient to prevent dismissal because of the close relationship between the Commissioner’s Office and the PCOB.
|9In support of this argument, Ms. Gold-ston cites In re Woods, 02-685 (La.App. 5th Cir.12/30/02), 836 So.2d 512, writ denied, 03-0277 (La.4/4/03), 840 So.2d 1216, in which the court stated that a notice to the Patient’s Compensation Fund is treated as the equivalent of notice to the Division of Administration, in spite of a recent statutory amendment suggesting that the two entities should be viewed as separate. Similarly, she cites Patty v. Christus Health of Northern LA., 34,871 (La.App.2d Cir.8/22/01), 794 So.2d 124, writ denied, 01-2651 (La.10/26/01), 802 So.2d 1253, in which this court held:
We therefore conclude that when a request for review of a malpractice claim is received by or mailed either to the Board ... or the Commissioner of Administration, the request is deemed filed with the Division of Administration ... (Emphasis Ms. Goldston’s.)
She contends that these cases stand for the proposition that, in the absence of any clear legislative intent to the contrary, courts should treat notice to the PCOB as the equivalent of notice to the Commissioner. We agree.
The record in the case sub judice reflects, as described supra, that the selec *1259 tion of an attorney-chair was made within the 90-day period and that Ms. Goldston’s attorney took “action” by sending a letter stating the same, albeit to the wrong agency. In Woods, supra, the court stated, “... the legislature intended that claims be filed with the Division of Administration through the [PCOB].” (Emphasis ours.) Considering the language of Woods, supra, and Patty, supra, we find that Ms. Gold-ston’s attorney was sufficiently diligent in the prosecution of her case by selecting an attorney-chair within the 90-day period. While the clerical error committed in this |incase was a serious oversight, we see no reason to deny Ms. Goldston her day in court. For these reasons, we reject this specification of error.

CONCLUSION

For the reasons set forth herein, the judgment of the trial court granting Ms. Goldston’s writ of mandamus is affirmed. Costs of this appeal are precluded pursuant to the provisions of La. R.S. 13:4521.
AFFIRMED.

. The statute at issue was amended, effective July 7, 2003. In the case sub judice, the parties agreed that the 2002 version of the statute was applicable. The 2002 version of this statute read, in pertinent part:
The commissioner shall dismiss a claim ninety days after giving notice by certified mail to the claimant or the claimant’s attorney if no action has been taken by the claimant or the claimant's attorney to secure the appointment of an attorney chairman for the state medical review panel within two years from the date of the request for the review of the claim was filed.

. In re Medical Review Panel of Ruth Jones, 00-1290 (La.App. 1st Cir.6/22/01), 801 So.2d 471, writs denied, 01-2120 (La.11/2/01), 800 So.2d 877, and 01-2145 (La.11/2/01), 800 So.2d 879. See, infra, pages 1256-57 for a discussion of Jones.

. In Jones, the nine letters were executed over a period of less than five months and included correspondence between the Division’s attorney and the plaintiff’s attorney, between the attorneys for both plaintiff and defendant and between plaintiff’s attorney and the selected attorney-chairman.