## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-266

**MONA LISA J. BENJAMIN**

**VERSUS**

**LAFAYETTE CITY-PARISH CONSOLIDATED GOVERNMENT, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2014-1909
HONORABLE THOMAS R. DUPLANTIER, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## CHARLES G. FITZGERALD
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Chief Judge, Shannon J. Gremillion, Jonathan W. Perry, Charles G. Fitzgerald, and Gary J. Ortego, Judges.

**REVERSED AND REMANDED.**

Cooks, Chief Judge, concurs for the additional reasons assigned by Judge Ortego. Ortego, Judge, concurs and assigns reasons.

**Lloyd Dangerfield**
**Attorney at Law**
**Post Office Box 91908**
**Lafayette, Louisiana 70509-1908**
**(337) 896-3777**
**Counsel for Plaintiff-Appellant:**
**Mona Lisa J. Benjamin**

**Mark Charles Dodart**
**Jeffrey A. Clayman**
**Mary K. Jones**
**Phelps Dunbar, L.L.P.**
**365 Canal Street, Suite 2000**
**New Orleans, Louisiana 70130**
**(504) 566-1311**
**Counsel for Defendants-Appellees:**
**Cajundome Commission**
**Nova Casualty Company**

**James Philip Meyer**
**The Aubert Law Firm**
**222 North Vermont Street**
**Covington, Louisiana 70433**
**(985) 809-2200**
**Counsel for Defendant-Appellee:**
**Schindler Elevator Corporation**

**FITZGERALD, Judge.**

The issue here is whether Plaintiff's tort action was properly dismissed as abandoned under La.Code Civ.P. art. 561.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff, Mona Lisa J. Benjamin, contends that she was injured while attending an event at the Cajundome in Lafayette, Louisiana. She filed suit against various defendants, including the Cajundome Commission, Nova Casualty Company, and Schindler Elevator Corporation.

Importantly, on October 1, 2018, Mona Lisa served Defendants with a supplemental discovery response. All parties agree that this was a "step" in the prosecution of Plaintiff's case under La.Code Civ.P. art. 561. Thereafter, nothing happened until December 4, 2020, when Mona Lisa's counsel sent a letter to Defendants stating in relevant part: "I have additional medical information to provide you as a means of supplementing the responses to your interrogatories and the request for production of documents, which should be forth coming within the next two weeks." Yet it was nearly twelve months before this information was provided to Defendants.

In the meantime, on November 12, 2021, Defendants filed an ex parte motion to dismiss Mona Lisa's tort action as abandoned. Four days later, the trial court entered a formal order of dismissal. Two weeks later, on November 23, 2021, Mona Lisa served Defendants with a supplemental discovery response which included the "additional medical information" referenced above. And eight days after that, Mona Lisa filed a motion to set aside the order of dismissal.

The hearing on Mona Lisa's motion was ultimately held on February 14, 2022. The trial court denied the motion from the bench, and this ruling was reduced to a

written final judgment signed on March 8, 2022. Mona Lisa has appealed this judgment.

On appeal, Mona Lisa asserts two assignments of error. First, that "[t]he trial court erred by failing to consider the letter sent on December 4, 2020 as a step in the prosecution of this case." And second, that "[t]he trial court erred in not acknowledging that the supreme court emergency orders suspended periods of abandonment making the ex parte motion for abandonment premature."

## LAW AND ANALYSIS

Here, the pertinent facts are undisputed, and the assigned errors are limited to questions of law. We therefore review both assignments de novo. *Silver Dollar Liquor v. Red River Parish Police Jury*, 10-2776 (La. 9/7/11), 74 So.3d 641.

### *First Assignment of Error*

Mona Lisa initially argues that the letter from her attorney to opposing counsel dated December 4, 2020, was sufficient to interrupt abandonment. The applicable law is La.Code Civ.P. art. 561, which states in relevant part:

> A. (1) An action . . . is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years . . . .
>
> B. Any formal discovery as authorized by this Code and served on all parties whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step in the prosecution or defense of an action.[1]

The interpretation of La.Code Civ.P. art. 561 was at issue in *Clark v. State Farm Mut. Auto. Ins. Co.*, 00-3010 (La. 5/15/01), 785 So.2d 779. There, the Louisiana Supreme Court explained as follows:

> Article 561 has been construed as imposing three requirements on plaintiffs. First, plaintiffs must take some "step" towards

---

[1] The formal methods of discovery are set forth in La.Code Civ.P. art 1421.

2

prosecution of their lawsuit. In this context, a "step is defined as taking formal action before the court which is intended to hasten the suit toward judgment, or the taking of a deposition with or without formal notice. Second, the step must be taken in the proceeding and, with the exception of formal discovery, must appear in the record of the suit. Third, the step must be taken within the legislatively prescribed time period of the last step taken by *either party*; sufficient action by either plaintiff or defendant will be deemed a step.

*Id.* at 784 (emphasis in original).

In this case, Defendants suggest that Mona Lisa's October 1, 2018 supplemental discovery response was the last step taken in the prosecution of the case, resulting in a three-year abandonment date of October 1, 2021. By contrast, Mona Lisa asserts that the December 4, 2020 correspondence was the last step taken, thereby extending the three-year abandonment period until December 4, 2023.

So, does the letter of December 4, 2020, constitute a step in the prosecution of Mona Lisa's action? Overall, the letter notifies Defendants of the new address and telephone number for Mona Lisa's counsel, it notifies Defendants that Mona Lisa has additional medical information that will be produced within a few weeks, and it notifies Defendants of several available trial dates. Yet in our view, this letter cannot be construed as formal discovery and thus it is not a "step" under La.Code Civ.P. art. 561.

Similar facts were presented in *Miles v. Suzanne's Café and Catering, Inc.*, 11-907 (La.App. 5 Cir. 3/27/12), 91 So.3d 1107. In that case, the fifth circuit held that informal discussions about possible settlement, suggestions about scheduling future depositions, and informal requests for documents were not considered steps for the purpose of interrupting the abandonment period.

Likewise, in *City of Baton Rouge v. Territo*, 16-925, pp. 7-8 (La.App. 1 Cir. 6/22/17), 225 So.3d 1149, 1154, the first circuit noted that even though the actions

taken by the defendant "were for the purpose of obtaining additional evidence by which to prosecute his claim, none of those actions—attempts to hire an appraiser, strategy meetings with fellow landowners, and taking photographs of their property and losses—could even loosely be construed as any act of formal discovery." Thus, his claim was dismissed as abandoned.

In addition, the first circuit in *Compensation Specialties, L.L.C. v. New England Mut. Life Ins. Co.*, 08-1549 (La.App. 1 Cir. 2/13/09), 6 So.3d 275, determined that the abandonment period was not interrupted by plaintiff sending a letter to defense counsel requesting cooperation in moving the case forward or by defense counsel writing to confirm an extension of time to respond to discovery. *See also Jackson v. Moock*, 08-1111 (La.App. 1 Cir. 12/23/08), 4 So.3d 840 (finding that correspondence between attorneys in furtherance of scheduling depositions is not a step under La.Code Civ.P. art. 561); *Burgess, Inc. v. Parish of St. Tammany*, 17-0153 (La.App. 1 Cir. 10/25/17), 233 So.3d 58 (finding that informal discovery requests and responses between the parties are not steps under Article 561).

In sum, Mona Lisa's letter of December 4, 2020, merely references discovery matters, advising that supplemental discovery responses would be forthcoming, and provides a handful of available trial dates. This is not formal discovery. This does not constitute a step in the prosecution of Mona Lisa's action. And Mona Lisa's first assignment is therefore without merit.

### Second Assignment of Error

As previously noted, Mona Lisa asserts in this assignment that "[t]he trial court erred in not acknowledging that the supreme court emergency orders suspended periods of abandonment making the ex parte motion for abandonment premature."

While Mona Lisa puts forth several arguments in support of this assignment, only one of them has merit. In essence, Mona Lisa points to the interplay between La.Code Civ.P. art. 562 and the Louisiana Supreme Court's emergency order of August 31, 2021, contending that the three-year abandonment deadline of October 1, 2021, had been suspended until late November 2021. And thus, her November 23, 2021 supplemental discovery response was timely served on all Defendants. We agree.

As stated before, it is uncontested that Mona Lisa's discovery response of October 1, 2018, was a step in the prosecution of her tort action. In other words, the three-year abandonment period started over, meaning that Mona Lisa's action would have abandoned by operation of law on October 1, 2021, unless extended by Article 562 and the supreme court's emergency order.

The emergency order at issue was entered by the supreme court in the wake of Hurricane Ida. In essence, the order suspended the period of abandonment for thirty days commencing from August 26, 2021. So how does this order extend Mona Lisa's abandonment deadline to late November 2021? Standing alone, it does not. But the order must be read in conjunction with La.Code Civ.P. art. 562, which states:

> A. Notwithstanding any other provisions of law to the contrary, in the event the governor declares a state of emergency or disaster pursuant to R.S. 29:721 through 772, the Supreme Court of Louisiana may enter an order or series of orders as deemed necessary and appropriate to suspend the period of abandonment for a period of time not to exceed ninety days. Thereafter, should the need for continuing suspension be necessary to preserve access to the courts, the governor may issue executive orders as deemed appropriate. The period of suspension authorized by the provisions of this Article shall terminate upon the earlier of an order of the Supreme Court of Louisiana or upon termination of the declared state of disaster or emergency. Nothing in this Article limits the authority of the governor or the legislature to act in accordance with its authority.

B. The right to file any pleading subject to the suspension as provided by Paragraph A of this Article shall terminate sixty days after the termination of the suspension as provided by Paragraph A of this Article.[2]

To summarize, the supreme court emergency order at issue was entered in accordance with paragraph A of Article 562. The order suspended the abandonment period for thirty days starting on August 26, 2021. Thus, the suspension terminated on September 27, 2021. This takes us to paragraph B of Article 562. Under paragraph B, Mona Lisa then had sixty days from September 27, 2021, to file a pleading or otherwise take a step in the prosecution of her action. And it is undisputed that Mona Lisa served Defendants with a supplemental discovery response on November 23, 2021, which is within sixty days of September 27, 2021. Accordingly, Mona Lisa was able to avail herself of the suspension.

Two more things. First, La.Code Civ.P. art. 562 is a rule of civil procedure. Such rules implement the substantive law and are to be construed liberally. La.Code Civ.P. art. 5051. With this in mind, we interpret paragraph B of Article 562 as applying to any step in the prosecution of an action, including formal discovery not filed in the record.

And second, contrary to Defendants' assertions, *National Oilwell Varco, L.P. v. Dual Trucking & Transportation*, 2022-0147 (La. App. 1 Cir. 5/20/22), has no bearing on the matter before us. In that case, the emergency order at issue suspended the abandonment period until September 20, 2020, meaning that the sixty-day cutoff under Article 562(B) was November 20, 2020. Because National Oilwell Varco

---

[2] Louisiana Code of Civil Procedure Article 562 was enacted by 2020 La. Acts No. 2, § 3 (eff. June 25, 2020). Two years later, Article 562 was repealed by 2022 La. Acts No. 469, § 3 (eff. Aug. 1, 2022). However, the repeal of Article 562 does not affect its applicability to this case.

failed to take any step in the prosecution of its action during this period of time, it was unable to avail itself of the suspension ordered by the supreme court.

In the end, Mona Lisa's second assignment has merit: the trial court erred in denying the motion to vacate the order of dismissal.

## DISPOSITION

For the above reasons, we reverse the trial court's judgment of March 8, 2022, and this case is remanded for further proceedings. The costs of this appeal total $942.60. These costs are assessed to Defendants, Cajundome Commission, Nova Casualty Company, and Schindler Elevator Corporation.

**REVERSED AND REMANDED.**

MONA LISA J. BENJAMIN

VERSUS

LAFAYETTE CITY-PARISH CONSOLIDATED
GOVERNMENT, ET AL.

**ORTEGO, Judge, concurring in the result**

I agree with the lead opinion that a reversal of the trial court is warranted in this case, and I concur in the result. However, I disagree with the majority's decision and finding that Plaintiff's *Assignment of Error #1* is without merit.

## I.      *December 2020 Communications: Interruption of Abandonment*

The central issue presented by Ms. Benjamin's first assigned error is whether, as a matter of law, factually undisputed communications among the parties in December 2020, interrupted the three-year abandonment period.

The parties concur as to the last "step" taken in the trial proceedings, but they differ as to whether the last "step" taken in the prosecution or defense of the case occurred October 1, 2018, or December 4, 2020.

Defendants maintain that the last "step" was Ms. Benjamin's service of supplemental discovery responses sent via certified mail, dated September 27, 2018, and received on October 1, 2018.  If Defendants' argument is correct, Benjamin's case became abandoned as of October 1, 2021, mandating our affirmation of the trial court's judgment.

1

Contrarily, Plaintiff argues that the last "step" occurred by virtue of discovery related communications, and other exchanges, among the parties commencing December 4, 2020. If Plaintiff's argument is correct, then as a matter of law, the three-year abandonment period would have been extended to December 2023, rendering the trial court's *Ex Parte* Order premature, and requiring its reversal.

With issue joined, this panel's focus should then turn, as to Plaintiff's Assignment of Error #1, to whether the parties' December 2020 communications tolled the running of the three-year abandonment period.

As the Louisiana Supreme Court stated in *Clark v. State Farm Mut. Auto. Ins. Co.*, 00-3010 (La. 5/15/01) at pp. 5-6, 785 So.2d 779, 784:

> Article 561 has been construed as imposing three requirements on plaintiffs. First, plaintiffs must take some "step" towards prosecution of their lawsuit. In this context, a "step" is defined as taking formal action before the court which is intended to hasten the suit toward judgment, or the taking of a deposition with or without formal notice. Second, the step must be taken in the proceeding and, with the exception of formal discovery, must appear in the record of the suit. Third, the step must be taken within the legislatively prescribed time period of the last step taken by either party; sufficient action by either plaintiff or defendant will be deemed a step.

The generally prevailing rules pertaining to abandonment are set forth in La. Code of Civ. P. article 561, excerpted here with emphasis:

> A. (1) *An action . . . is abandoned when the parties fail to take any step* in its prosecution or defense in the trial court *for a period of three years . . . .*
>
> (3) This provision shall be operative without formal order, but, on *ex parte* motion of any party or other interested person by affidavit which provides that no step has been timely taken in

2

the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment. ....

B. *Any formal discovery as authorized by this Code and served on all parties whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step* in the prosecution or defense of an action.

Additionally, Article 561 (B) of this provision is especially relevant to when the sharing of discovery related matters constitutes a "step" in the prosecution or defense of an action. So is La. Code of Civ. P. article 1474 (C)(4), as if to essentially underscore the point: "The serving of any discovery materials pursuant to the provisions of this Article shall be considered a step in the prosecution or defense of an action for purposes of Article 561, notwithstanding that such discovery materials are not filed in the record of the proceedings."

At the heart of this assignment of error lies the latter exception. Defendants maintain that the last "step" Ms. Benjamin took occurred October 1, 2018, when Appellant's service of supplemental discovery responses was received by Defendant, thus meaning her case was legally abandoned as of October 1, 2021, six weeks prior to Defendant filing its November 12, 2020, Motion to Dismiss.

Plaintiff argues that she took a "step" long after October 1, 2018, via discovery related communications among the parties in December 2020, thus extending her three-year abandonment period to December 2023, well beyond Defendant's Motion to Dismiss filed November 12, 2021, thus rendering said Order of Dismissal premature and invalid.

3

Therefore, the merits of Plaintiff's first assigned error turn exclusively on whether her counsel's communication of December 2020, or Defense counsel's response, prior to Dismissal Order was signed, along with Plaintiff's transmission of supplemental discovery and medical records in November 2021, shortly after the Dismissal was signed, interrupted the three-year tolling and abandonment.

The record and evidence before us contain plaintiff counsel's December 4, 2020, correspondence emailed to Defendants, the pertinent part of which states:

> Regarding my client, Ms. Benjamin, I have additional medical information to provide you as a means of supplementing the responses to your interrogatories and the request for production of documents, which should be forth coming within the next two weeks.
>
> Toward the objective of concluding this matter, I contacted the docket clerk for some possible jury trial dates in 2021. The dates available are:
>
> 1. June 28 (currently 2nd fixing).
> 2. August 9 (currently 3rd fixing)
> 3. November 15 (currently – 1st fixing);
>
> I would appreciate your reviewing your calendar and letting me know which of the date(s) are convenient for you, so we may have the matter calendared. If any questions, please feel free to inquire.

In response, Defendants emailed separate replies, both captioned "Mona Lisa Benjamin v Cajundome Commission, et al – Trial Setting." The record demonstrates that Mr. James Mayer, counsel for Schindler Elevator, replied to Plaintiff's counsel

4

with a copy to all counsel, on December 8, 2020, and states (emphasis added):

Date: Tuesday, December 8, 2020, 06:02 PM CST

Mr. Dangerfield,

It was good to hear from you. The last time our office heard from you was on September 27, 2018, when you provided a supplemental document production. In your letter of December 7, 2020, you state you have additional medical information you are going to provide to me "as a means of further supplementing the responses to interrogatories and the request for production of documents, which should be forth coming within the next two weeks."

Until I receive and review the documents, I cannot agree to setting this case for trial. Further, before I can agree to scheduling a trial date, I need to *take an updated deposition* of the plaintiff. She was last deposed on December 4, 2015, and based on your representations, Ms. Benjamin has undergone additional medical treatment. *After I receive the supplemental records and depose Ms. Benjamin, we can contact the court about setting a trial date. Alternatively, we can contact the court to schedule a Status Conference to set deadlines, but not a trial date. I look forward to moving this case forward.*

Regards,

James P. Meyer
The Aubert Law Firm
222 North Vermont Street
Covington, LA 70433-3240

Likewise, using the same caption, "Mona Lisa Benjamin v Cajundome Commission, et al – Trial Setting," Mr. Jeffery Clayman, co-counsel for the Cajundome Commission, replied on December 10, 2020, with copies to all counsel, stating (emphasis added):

5

Date: Thursday, December 10, 2020, 01:51 PM CST

> Thank you, Lloyd. I would agree with Jimmy that, given this matter has been pending for some time with periodic, long lapses in activity, it makes sense for us to review any updated information and evaluate where things stand. *To that end, we would appreciate receiving, in addition to any updated medical records, supplemental responses to discovery where appropriate. I wanted to also remind both you and Jimmy that my client has a third-party demand that was effectively stayed as a result of the third party defendant's military service. We will need to determine where that stands, as well.*

Article 561(A)(3) requires a party or interested person's *ex parte* motion for dismissal to be supported by an affidavit stating that no step has been taken in the prosecution or defense of the action for a period of three years. A review of the record reflects that Schindler Elevator's *Ex Parte* Motion to Dismiss was accompanied by an affidavit, yet none of the parties' communications of December 2020 were referenced in the Affidavit submitted by Schindler Elevator in support of its Motion to Dismiss.

Additionally, and as to the issue of plaintiff's "clear intention" to abandon her suit, the record reflects that even after the trial court granted Defendant's *Ex Parte* Motion to Dismiss on November 12, 2021, Plaintiff's counsel on November 23, 2021, emailed counsel for both Defendants, attaching a "CD", additional discovery materials, including Plaintiff's Supplemental Responses to Interrogatories, Plaintiff's medical reports and medical specials, and also detailed charts including treatment dates, billings, and types of treatment. The record reflects that Defense counsel, Mr. Clayton, received and accepted said additional discovery

6

on November 23, 2021; and Defense counsel, Mr. Meyer, received and accepted said additional discovery on November 26, 2021.

Far from evidencing Plaintiff's "clear intention" to abandon her suit, all of these parties by their December 2020 exchange, along with Plaintiff's November 2021 supplemental discovery responses, confirmed that it was not Plaintiff's "clear intention" to abandon her suit.

While La. Code of Civil Procedure Articles 561 and 1474 (C)(4) offer some protections to ensure that parties are not wrongly aggrieved by dismissals on grounds of abandonment, they are not litigants' exclusive protections.

In fact, Louisiana courts have long been admonished that it is our duty not to deny litigants their day in court, and certainly not when it was clearly not their intention to abandon their suit.

> The jurisprudence has uniformly held that La. C. Civ. Pro. art. 561 is to be liberally construed in favor of maintaining a plaintiff's suit. The jurisprudence has echoed some general policy considerations that dictate this result. Oft quoted is the following statement by Justice (then Judge) Lemmon in *Kanuk v. Pohlmann*, 338 So.2d 757, 758 (La.App. 4th Cir.1976), *writ denied*, 341 So.2d 420 (La.1977):

>> The purpose of the C.C.P. art. 561 is to dismiss actions which have been abandoned, and the article provides for dismissal of those cases in which a plaintiff's inaction during a legislatively ordained period has clearly demonstrated his abandonment of the case. The article was not intended, however, to dismiss those cases in which a plaintiff has clearly demonstrated before the court during the prescribed period that he does not intend to abandon the action.

7

Quoting the above language from *Kanuk*, the appellate courts have declined to allow form to prevail over substance in determining whether an action has been abandoned. This court has likewise declined to allow suits to be dismissed as abandoned based on technical formalities.

In sum, abandonment is not meant to dismiss actions on mere technicalities, but to dismiss actions which in fact clearly have been abandoned.

*Clark,* 785 So.2d at 785–86. (Emphasis added; notes omitted, including citations.)

"For the purpose of determining abandonment, 'the intent and substance of a party's actions matter far more than technical compliance.'" *Roubion Shoring Co., LLC v. Crescent Shoring*, L.L.C., 21-237 (La. App. 5 Cir. 12/22/21), 335 So.3d 354, 361, *writ denied*, 22-00282 (La. 4/20/22), 336 So.3d 468, quoting *Thibaut Oil Co., Inc. v. Holly*, 06-0313 (La. App. 1 Cir. 2/14/07), 961 So.2d 1170, 1172-73. *See also Louisiana Dep't of Transp. & Dev. v. Oilfield Heavy Haulers, L.L.C.*, 11-0912 (La. 12/6/11), 79 So.3d 978, 982.

In addition to the two discovery exceptions legislatively codified in Civil Procedure Articles 561 and 1474 (C)(4), the Supreme Court in *Clark* identified two others:

Those two exceptions are: (1) a plaintiff-oriented exception, based on *contra non valentem*, that applies when failure to prosecute is caused by circumstances beyond the plaintiff's control; and (2) a defense-oriented exception, based on acknowledgment, that applies when the defendant waives his right to assert abandonment by taking actions inconsistent with an intent to treat the case as abandoned. Only the latter, defendant-oriented exception is relevant to this case.

*Clark,* 785 So.2d at 784–85.

8

I would vote to conclude that, as a matter of law, the parties' communications of December 2020, along with Plaintiff's communications of November 2021, patently constituted "actions inconsistent with an intent to treat the case as abandoned," *Clark*, *supra*, 785 So.2d at 785, and thus constituted acts taken by a defendant who "waives his right to assert abandonment by taking actions inconsistent with an intent to treat the case as abandoned," *State, Dept. of Transp. v. Cole Oil*, 822 So.2d 229, 232 (La. App. 2 Cir. 2002), if only because they constitute acts by defendants "provoking or responding to discovery." *Clark v. State Farm Mut. Auto. Ins. Co.*, at p. 14, 785 So.2d at 789, footnote 15, quoting 1 Frank L. Maraist & Harry T. Lemmon, *Louisiana Civil Law Treatise: Civil Procedure* § 10.4 at 244 (1999).

Additionally, a review of the record, and specifically the trial court's oral reasons, shows a reluctant trial court succinctly stating for the record (emphasis added):

> The problem that I have is that, obviously, in December of 2020, there was communication between parties. Mr. Dangerfield communicated about his discovery and those things that happened. I mean, yeah, it certainly seems to me, you know, when I usually see these cases of abandonment, it's when somebody really, really abandons a case. It's hard for me to believe that the plaintiff abandons a case when they send a CD, answers some interrogatory discoveries, and after that even send a communication by e-mail that, hey, let's get this matter set for a trial. ***That doesn't sound like a plaintiff who abandoned their case.***

9

Further, the record reflects that the trial court purposefully did not retract these candid remarks even after being reminded by Schindler Elevator's Counsel that Plaintiff did not send her responses at the time of this December 2020 communication, but only did so later.

I would find that to uphold dismissal of Plaintiff's claim, in light of the unique facts of this case, would be to deny Plaintiff her day in court based on a technicality given that Schindler Elevator, and its codefendant, as of December 2020 were not only "fully aware of the actions" taken by Plaintiff to move the parties' case along but further they were "participating in them." *In re Med. Rev. Panel of Jones*, 801 So.2d. at 475-476.

Taking "substance over form," *Id.*, and given the unique facts of this case, I feel this panel should find that this action taken by Plaintiff was a "step" in furtherance of this litigation. I therefore join in the reversal of the trial court under the specific facts of this case.